# EXHIBIT A



1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
703.243.9423
www.consovoymccarthy.com

December 8, 2023

Jocelyn Benson
Secretary of State
Michigan Department of State
Richard H. Austin Building, 4th Floor
430 W. Allegan
Lansing, MI 48918

Jonathan Brater
Director, Michigan Bureau of Elections
Michigan Department of State
Bureau of Elections
Richard H. Austin Building, 1st Floor
430 W. Allegan
Lansing, MI 48918

Dear Secretary Benson and Director Brater:

As you are aware, the National Voter Registration Act (NVRA) requires States to maintain an accurate and current voter registration roll for elections for federal office. Based on our analysis, Michigan is in violation of Section 8 of the NVRA. By comparing publicly available voter registration records with the U.S. Census Bureau's 2021 citizen voting age population data, we have determined that 55 counties have more registered active voters than adult citizens over the age of 18. We have identified another 23 counties that have voter registration rates that exceed 90 percent of adult citizens over the age of 18, a figure that far eclipses the voter registration rate nationwide in recent elections. This evidence shows that your office and county, city, and township clerks in these counties are not conducting appropriate list maintenance to ensure that the voter registration roll is accurate and current, as required by federal law.

Congress enacted the NVRA "to protect the integrity of the electoral process." 52 U.S.C. §20501(b)(3). Specifically, it enacted Section 8 "to ensure that accurate and current voter registration rolls are maintained." *Id.* §20501(b)(4). Retaining voter rolls bloated with ineligible voters harms the electoral process, heightens the risk of electoral fraud, and undermines public confidence in elections. After all, "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). Section 8 of the NVRA obligates States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" due to death or change of residence. 52 U.S.C. §20507(a)(4). And as the U.S. Supreme Court

has recently confirmed, "federal law makes this removal mandatory." *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833, 1842 (2018).

As the Secretary of State and the Director of the Michigan Bureau of Elections, you are responsible for coordinating the required statewide list maintenance under the NVRA. The NVRA requires each State to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under" the law. 52 U.S.C. §20509. Michigan law designates the Secretary of State as the State's chief election officer, Mich. Comp. Laws §168.21, and instructs the Director of Elections to "perform the duties of the secretary of state under his or her supervision, with respect to the supervision and administration of the election laws." *Id.* at §168.32. Michigan law further provides that "[t]he secretary of state is responsible for the coordination of the requirements imposed under this chapter, the national voter registration act of 1993, and the help America vote act of 2002." *Id.* §168.509n.

In June 2020, a Michigan voter sued you, alleging that you failed to maintain accurate voter rolls. In January 2021, Secretary Benson announced that she slated 177,000 voter registrations for cancellation "because the state ha[d] reason to believe" that those voters had "moved away from the registration address." *See* Mich. Dept. of State, *Secretary Benson Continues to Bolster Election Security* (Jan. 28, 2021), perma.cc/H9WY-5HC2. She also promised to conduct additional list maintenance efforts. *Id.* In light of those announcements, the parties stipulated that the case be voluntarily dismissed. *See Daunt v. Benson*, No. 1:20-cv-00522, ECF No. 58 (W.D. Mich. Feb. 16, 2021).

Despite the Secretary's promises to conduct list maintenance, Michigan's voter rolls remain significantly bloated. This letter provides statutory notice that that the Republican National Committee, Jordan Jorritsma, and Emerson Silvernail, acting as a political party and registered Michigan voters with substantial interests in secure elections, will bring a lawsuit against you and, if appropriate, against officials in the counties named in this letter, if you fail to take specific actions to correct these violations of Section 8 within the 90-day timeframe specified in federal law. *See Green v. Bell*, No. 321-cv-00493, 2023 WL 2572210, at *3 (W.D.N.C. Mar. 20, 2023). Furthermore, while we hope to avoid litigation, we still formally request that the Michigan Bureau of Elections and relevant officials within the 78 counties named in this letter (if they maintain separate records) act to preserve documents as required by Section 8(i) of the NVRA. 52 U.S.C. §20507(i)(1)-(2). This letter explains how we concluded that Michigan is violating Section 8 of the NVRA and the curative steps needed to avoid litigation.

### I. The NVRA protects election integrity by requiring States take reasonable efforts to maintain accurate and current lists of registered active voters.

Michigan's voter registration list maintenance program must be "uniform, non-discriminatory, and in compliance with the Voting Rights Act." 52 U.S.C. §20507(b)(1).

Section 8 requires that States "remove the names of ineligible voters from the official lists of eligible voters by reason of (A) the death of the registrant; or (B) a change in the residence of the registrant" to outside of his or her current voting jurisdiction. *Id.* §20507(4)(A)-(B).

Additionally, the Help America Vote Act (HAVA) mandates that States adopt computerized statewide voter registration lists and maintain them "on a regular basis" in accordance with the NVRA. *Id.* §21083(a)(2)(A). States must "ensure that voter registration records in the State are accurate and are updated regularly," a process which must include making a "reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." *Id.* §21083(a)(4). HAVA's list maintenance mandates include coordination with "State agency records on death" and "State agency records on felony status" to facilitate the removal of individuals who are deceased or rendered ineligible under State law due to felony conviction. *Id.* §21083(a)(2)(A)(ii)(I)-(II).

As the chief election officials for Michigan, the responsibility rests with you to coordinate and oversee the list maintenance activities of local and county election officials. *See, e.g.*, *Scott v. Schedler*, 771 F.3d 831, 839 (5th Cir. 2014) ("[T]he NVRA's centralization of responsibility counsels against … buck passing"); *United States v. Missouri*, 535 F.3d 844, 850 (8th Cir. 2008) (explaining that a State or chief election official "may not delegate the responsibility to conduct a general program to a local official and thereby avoid responsibility if such a program is not reasonably conducted"); *see also, e.g.*, Mich. Comp. Laws §§168.509n, 168.509o, 168.509r, 168.509ff, (setting forth requirements for the Secretary of State and clerks to maintain registration records).

## II. Fifty-five Michigan counties have more registered active voters than voting-eligible citizens, and twenty-three others have suspiciously high rates of voter registration.

Based on data gathered from the U.S. Census Bureau's 2021 citizen voting age population data and the most up-to-date count of registered active voters available from the Michigan Bureau of Elections, Michigan is failing to meet its list maintenance obligations. Comparing the registered active voter count to the 2021 Census data reveals that these 55 counties have voter registration rates at or above 100 percent: Alcona (113%), Allegan (105%), Alpena (101%), Antrim (113%), Arenac (104%), Barry (103%), Benzie (109%), Berrien (101%), Calhoun (100%), Cass (100%), Charlevoix (106%), Cheboygan (104%), Clare (102%), Crawford (110%), Delta (104%), Dickinson (101%), Emmet (106%), Genesee (104%), Gladwin (103%), Grand Traverse (102%), Huron (100%), Iosco (104%), Iron (106%), Kalkaska (115%), Kent (101%), Keweenaw (115%), Lapeer (102%), Leelanau (110%), Livingston (104%), Mackinac (111%), Macomb (101%), Manistee (100%), Mason (104%), Menominee (101%), Midland (101%), Missaukee (106%), Monroe (101%), Montmorency (111%), Muskegon (102%), Newaygo (104%), Oakland (102%), Oceana (105%), Ogemaw (106%),

Ontonagon (102%), Osceola (102%), Oscoda (112%), Otsego (112%), Presque Isle (107%), Roscommon (111%), Schoolcraft (108%), Shiawassee (102%), St. Clair (103%), Van Buren (103%), Wayne (102%), and Wexford (105%).

In other words, in these counties there are more registered voters than eligible voters. This impossible statistic shows that voter registration records are not being maintained. Meanwhile, 23 other counties across the State have voter registration rates of 90 percent or greater (in some cases, approaching 100 percent): Alger (95%), Baraga (95%), Bay (99%), Branch (96%), Clinton (99%), Eaton (98%), Gogebic (99%), Hillsdale (96%), Ionia (90%), Jackson (94%), Kalamazoo (95%), Lake (99%), Lenawee (95%), Luce (95%), Marquette (94%), Mecosta (90%), Montcalm (96%), Ottawa (99%), Saginaw (99%), Sanilac (98%), St. Joseph (98%), Tuscola (97%), and Washtenaw (94%).

These voter registration rates are abnormally or, in the case of counties with greater than 100 percent registration, impossibly high. This constitutes strong evidence that Michigan's voter rolls are not being properly maintained. According to the U.S. Census Bureau, only 69.1% of the citizen voting-age population was registered nationwide in the November 2022 election. *See* U.S. Census Bureau, *Voting and Registration in the Election of November 2020, Table 4a, Reported Voting and Registration of the Total Voting-Age Population, for States: November 2022*, perma.cc/XQ3R-E4FT. Similarly, only 72.7% of the citizen voting-age population was registered nationwide in the November 2020 election. *See* U.S. Census Bureau, *Voting and Registration in the Election of November 2020, Table 4a, Reported Voting and Registration, for States: November 2020*, perma.cc/7BUT-ZLDA. The U.S. Census Bureau further reported that Michigan's statewide voter registration rates for the 2022 and 2020 elections were 77.1% and 73.8% of the citizen voting-age population, respectively. *Id.* Thus, these 78 counties are significant outliers, touting voter registration rates 17 to 46 percentage points higher than the national figures from 2022 and 2020, and 13 to 41 percentage points above the State figures for the same period. Discrepancies on this scale cannot be attributed to above-average voter participation and instead point to deficient list maintenance.

Michigan's failure to provide accurate voter rolls violates federal law, jeopardizes the integrity of the upcoming 2024 federal election, and signals to voters that elections in Michigan are not being properly safeguarded.

### III. Avoiding litigation

The NVRA includes a private right of action, empowering any "person who is aggrieved by a violation" of the statute to bring a civil action in federal district court for declaratory or injunctive relief. 52 U.S.C. §20510(b)(1)-(2); *see Green*, 2023 WL at *1-*7. If the violations we have identified are not corrected within 90 days of receipt of this letter, we will have to file a lawsuit. *See* 52 U.S.C. §20510(b)(2).

We hope to avoid litigation and would welcome immediate efforts by your office to bring Michigan into compliance with Section 8. We ask that you evaluate your

5

current list maintenance procedures and protocols to identify the cause of the compliance failures discussed in this letter. We also ask that you modify your current list maintenance program to ensure that it is comprehensive, nondiscriminatory, and in compliance with federal law. Your list maintenance program must identify and remove these categories of individuals from the official lists of eligible voters:

1. All persons who are ineligible to vote by reason of a change in residence;
2. Deceased individuals;
3. Persons who are incarcerated;
4. All other ineligible voters.

We also ask that you, and should they want to respond separately, relevant officials from each named county, respond in writing within 45 days of the date of this letter. This response should fully describe the efforts, policies, and programs you are taking, or plan to undertake before the 2024 general election to bring Michigan into compliance with Section 8. This response should also note when you plan to begin and complete each specified measure and the results of any programs or activities you have already undertaken. We also ask you to advise us what policies are presently in place, or will be put in place, to ensure effective and routine coordination of list maintenance activities with the federal, State, and local entities outlined below. Finally, we seek a description of the specific steps you intend to take to ensure routine and effective list maintenance on a continuing basis beyond the 2024 election. To avoid litigation, we may seek certain reasonable assurances that you will affirmatively undertake these efforts, including the execution of a settlement agreement.

Should you refuse to comply with Section 8 and thus require legal action, you should know that the NVRA authorizes courts to award "reasonable attorney fees, including litigation expenses, and costs" to the prevailing party. 52 U.S.C. §20510(c). Therefore, if litigation ensues, you risk bearing the financial burden of the full cost of the litigation.

### IV. Preservation of records

We also ask that you act to preserve certain records as required under the NVRA, should they be needed in the future or for possible litigation. 52 U.S.C. §20507(i). These documents and records include, but are not limited to:

1. A copy of the most recent voter registration database for the State of Michigan and for each named county, including pertinent information on each voter (name, date of birth, home address, voter activity, and active or inactive status);
2. Internal communications and emails of the Michigan Bureau of Elections' office, applicable county boards of elections, and any divisions, bureaus, offices, third party agents, and contractors relating to voter list maintenance;

3. All emails or other communications between the Michigan Bureau of Elections and local elections officials concerning their list maintenance activities, their duties to maintain accurate and current lists, and any consequences arising from a failure to do so;

4. All email or other communications between the Michigan Bureau of Elections and any State or federal offices and agencies, in which the Michigan Bureau of Elections seeks or obtains information about registered voters who have moved, been convicted and imprisoned, died, or are otherwise ineligible, for use in list maintenance activities; and

5. All email or other communications between the Michigan Bureau of Elections and any other State, as well as email and communications with the Electronic Registration Information Center, the American Association of Motor Vehicle Authorities, and the National Association for Public Health Statistics and Information Systems, regarding obtaining information about voters who are deceased or who have moved for use in list maintenance activities.

We look forward to working with you in a productive fashion to ensure the accuracy and currency of Michigan's voter rolls and to protect the integrity of its voting process. While we hope to avoid litigation, if we do not receive the requested response, and if Michigan fails to take the necessary curative steps to resolve the issues identified in this letter, you will be subject to a lawsuit seeking declaratory and injunctive relief.

We look forward to your response.

Sincerely,

*/s/ Thomas R. McCarthy*

| | |
|---|---|
| Gilbert C. Dickey | Thomas R. McCarthy |
| Tiffany H. Bates | CONSOVOY MCCARTHY PLLC |
| Conor D. Woodfin | 1600 Wilson Boulevard |
| CONSOVOY MCCARTHY PLLC | Suite 700 |
| gilbert@consovoymccarthy.com | Arlington, VA 22209 |
| tiffany@consovoymccarthy.com | (703) 243-9423 |
| conor@consovoymccarthy.com | tom@consovoymccarthy.com |