UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

REPUBLICAN NATIONAL COMMITTEE,
JORDAN JORRITSMA, and EMERSON
SILVERNAIL,

              *Plaintiffs*,

v.

JOCELYN BENSON, *in her official capacity as
Michigan Secretary of State*; JONATHAN BRATER,
*in his official capacity as Director of the Michigan
Bureau of Elections*,

              *Defendants*.

Case No. 1:24-cv-00262
Hon. Jane M. Beckering
Mag. Judge Ray S. Kent

ORAL ARGUMENT REQUESTED

**MOTION TO INTERVENE BY
NON-PARTY LEAGUE OF WOMEN VOTERS OF MICHIGAN**

## THE LEAGUE'S MOTION TO INTERVENE

The League of Women Voters of Michigan (the "League") respectfully requests that it be permitted to intervene as a defendant in this action as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

WHEREFORE, the League respectfully requests that the Court grant this motion and allow the League to intervene as a defendant in this matter.

Dated: April 4, 2024

Respectfully submitted,

/s/ *Eliza Sweren-Becker*

BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW

Eliza Sweren-Becker (N.Y. Bar No. 5424403)
Andrew B. Garber (N.Y. Bar No. 5684147)*
Sean Morales-Doyle (N.Y. Bar No. 5646641)
120 Broadway, Suite 1750
New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308
sweren-beckere@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu
morales-doyles@brennan.law.nyu.edu

/s/ *Robert A. Atkins*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Robert A. Atkins (N.Y. Bar No. 2210771)*
Richard A. Rosen (N.Y. Bar No. 1663830)*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212.373.3000
Facsimile: 212.757.3990
ratkins@paulweiss.com
rrosen@paulweiss.com

Meredith R. Dearborn (C.A. Bar No. 268312)*
535 Mission St., 24th Floor
San Francisco, CA 94105
Telephone: 628.432.5100
Facsimile: 628.232.3101
mdearborn@paulweiss.com

*Attorneys for Proposed
Intervenor-Defendant*

*\*Application for admission forthcoming*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 4, 2024, I caused a true and correct copy of the foregoing document

to be filed and served electronically via the ECF system.

Respectfully submitted,


/s/ *Eliza Sweren-Becker*
Eliza Sweren-Becker


*Counsel for Proposed*
*Intervenor-Defendant*

iii

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, JORDAN JORRITSMA, and EMERSON SILVERNAIL,<br><br>       *Plaintiffs*,<br><br>v.<br><br>JOCELYN BENSON, *in her official capacity as Michigan Secretary of State*; JONATHAN BRATER, *in his official capacity as Director of the Michigan Bureau of Elections*,<br><br>       *Defendants*. | Case No. 1:24-cv-00262<br>Hon. Jane M. Beckering<br>Mag. Judge Ray S. Kent |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE BY
NON-PARTY LEAGUE OF WOMEN VOTERS OF MICHIGAN**

ORAL ARGUMENT REQUESTED

## <u>TABLE OF CONTENTS</u>

**Page**

THE LEAGUE'S MOTION TO INTERVENE ............................................................... i

TABLE OF AUTHORITIES ................................................................................ vi

CONCISE STATEMENT ................................................................................... 1

INTRODUCTION ......................................................................................... 2

BACKGROUND .......................................................................................... 3

     A.     The League Of Women Voters Of Michigan ......................................... 3

     B.     Plaintiffs' Recycled Attempt To Use The NVRA To Disenfranchise Michigan Voters ................................................................... 5

     C.     Efforts To Sow Distrust In Election Administration ............................ 6

ARGUMENT ............................................................................................. 8

I.     THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(A) ....................................................................................... 8

     A.     The League's Motion Is Timely .................................................. 8

     B.     The League Has a Substantial Legal Interest in the Case .................... 10

     C.     The League's Ability to Protect Its Interests Will Be Impaired Absent Intervention ...................................................................... 12

     D.     Defendants May Not Adequately Represent the League's Interest .............. 13

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(B) ............................................................. 15

CONCLUSION ........................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bellitto* v. *Snipes,*
    935 F.3d 1192 (11th Cir. 2019) ...................................................................6, 13

*Bellitto* v. *Snipes,*
    No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) ...........................11

*Bellitto v. Snipes,*
    No. 16-cv-61474 (S.D. Fla. Mar. 30, 2018) ...................................................7

*Berger* v. *N.C. State Conf. of the NAACP,*
    142 S. Ct. 2191 (2022).............................................................................14

*Bradley* v. *Milliken,*
    828 F.2d 1186 (6th Cir. 1987) .................................................................10

*Daunt* v. *Benson,*
    No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30 ..........................*passim*

*Grutter* v. *Bollinger,*
    188 F.3d 394 (6th Cir. 1999) ...........................................................10, 13

*Jud. Watch, Inc.* v. *Penn.,*
    524 F. Supp. 3d 399 (M.D. Pa. 2021)..........................................................6

*Kirsch* v. *Dean,*
    733 Fed. App'x 268 (6th Cir. 2018) ............................................................8

*Kobach* v. *U.S. Election Assistance Com'n,*
    No. 13-cv-4095, 2013 WL 6511874
    (D . Kan. Dec. 12, 2013)...................................................................9, 11, 14

*League of Women Voters of Mich.* v. *Johnson,*
    902 F.3d 572 (6th Cir. 2018) ...................................................13, 14, 15

*Mich. State AFL-CIO* v. *Miller,*
    103 F.3d 1240 (6th Cir. 1997) .................................................10, 12, 13

*United States* v. *Michigan,*
    424 F.3d 438 (6th Cir. 2005) .................................................................15

*Pub. Int. Legal Found., Inc.* v. *N.C. State Bd. of Elections,*
    996 F.3d 257 (4th Cir. 2021) ...................................................................5

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Pub. Int. Legal Found., Inc.* v. *Winfrey*,
  463 F. Supp. 3d 795 (E.D. Mich. 2020)........................................................... *passim*

*Pub. Int. Legal Found.* v. *Benson*,
  -- F. Supp. 3d --, 2024 WL 1128565
  (W.D. Mich. Mar. 1, 2024) ........................................................................... *passim*

*Republican National Committee et al.* v. *Jocelyn Benson et al.*,
  No. 1:24-cv-00262 (Mich. Ct. Cl. Mar. 28, 2024), available at https://prod-static.gop.com/media/documents/1_Complaint_1710344302.pdf............................................7

**Statutes**

52 U.S.C. §§ 20501–20511 ....................................................................................5, 7

**Other Authorities**

Fed. R. Civ. P. 16 ....................................................................................................9

Fed. R. Civ. P. 24(a) ........................................................................................ i, 1, 8, 12

Fed. R. Civ. P. 24(b) ......................................................................................... i, 1, 15

Meet The Press Tr., National Broadcast Corporation, March 24, 2024, available at https://www.nbcnews.com/meet-the-press/meet-press-march-24-2024-n1309365................................................................................................................8

Mich. Ct. R. 7.1(a) ..................................................................................................1

Mich. Ct. R. 7.1(d) .................................................................................................. i

Mich. R. Civ. P. III(B) ............................................................................................ i

S. Rep. No. 103-6 (1993) ............................................................................... 5, 6, 11

## <u>CONCISE STATEMENT</u>

Pursuant to Local Civil Rule 7.1(a), the League of Women Voters of Michigan states that intervention should be granted as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

## <u>INTRODUCTION</u>

Two federal district courts in Michigan recently permitted the League of Women Voters of Michigan (the "League"), a 105-year-old nonpartisan voting rights institution, to intervene in lawsuits alleging that Michigan's voter-roll maintenance violates the National Voter Registration Act ("NVRA").[1]  The Republican National Committee ("RNC") brings strikingly similar claims here, warranting intervention for the same reasons.

The RNC's attempt to purge statewide voter rolls based on its methodologically unsound comparison between outdated census data and current voter lists strikes at the League's core mission: to secure eligible Michiganders' right to vote, to encourage them to do so, and to maintain confidence in the electoral process.  Implementing the RNC's proposed scheme would wreak havoc on election administration across Michigan.  It would result in overbroad voter purges, which would impair the League's interests by requiring the League to devote its limited resources to the re-registration of erroneously purged voters, engage in new education efforts and undertake other costly damage control initiatives.  It is just for such reasons that the courts in *Winfrey and Daunt* recognized the League's compelling interest in participating actively in lawsuits such as this one.

This lawsuit presents even more compelling reasons to grant the League's motion to intervene.  It is broader in scope than either of the two prior actions, and is thus virtually guaranteed to impact the League's membership.  It also comes shortly after this Court found that Defendants had taken reasonable measures to remove deceased voters from the official rolls.[2]

---

[1] *Pub. Int. Legal Found., Inc.* v. *Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020); *see also* Order Granting Mot. to Intervene, *Daunt* v. *Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30, at 2.

[2] *See Pub. Int. Legal Found.* v. *Benson*, -- F. Supp. 3d --, 2024 WL 1128565, at *12 (W.D. Mich. Mar. 1, 2024) ("*PILF*").  The *PILF* case involved a specific challenge to 27,000 individuals

While couched as an innocuous effort to require Michigan to maintain "clean and accurate voter registration records," Compl. ¶ 1, ECF No. 1, PageID.1, the RNC's re-assertion of meritless theories in a critical swing state in the months before a federal election, coupled with its well-publicized project to bring similar lawsuits in other states, reveals this lawsuit's true nature: A cynical and anti-democratic attempt to sow distrust in elections by attempting to create the appearance of wrongdoing by election administrators where none exists. The League's participation as Intervenor-Defendant will bring a valuable perspective to the Court in adjudicating this important case.

## **BACKGROUND**

### A.   **The League Of Women Voters Of Michigan**

The League is a nonpartisan, nonprofit, grassroots statewide organization formed in April 1919 after Michigan voters granted women suffrage in November 1918. *See* Decl. of Paula Bowman ("Bowman Decl.") ¶ 5. It is dedicated to encouraging its members and Michiganders generally to exercise their right to vote as protected by the federal Constitution, the Michigan Constitution, and federal and state law. *Id.* ¶ 6. The League impacts public policies, promotes citizen education, and makes democracy work by, among other things, removing unnecessary barriers to full participation in the electoral process. *Id.* ¶ 7.

Currently, the League has 28 local Leagues with over 2,600 members of all political affiliations statewide. *Id.* ¶ 12. The League serves voters in nearly all, if not all, counties in

---

Plaintiff claimed were deceased. *Id.* at *10. Plaintiffs here seek to purge potentially hundreds of thousands of voters, including living voters, that are all but statistically certain to include League members. *See, e.g.*, Compl. ¶¶ 7–8, 47–49, 60–66, ECF No. 1, PageID.2, 11–14. Denial of other organizations' intervention in *PILF* in no way undermines the certainty of the League's stake here, as established below.

Michigan, *id.*, including nearly all, if not all, of the roughly 76 counties Plaintiffs target.  Compl. ¶¶ 3–4, 48–49, ECF No. 1, PageID.1, 11–12.

As part of its focus on expanding voter access, the League leads voter registration drives, distributes information about the electoral process, promotes electoral laws and practices that encourage voter participation, partners with local organizations to host events on voting rights and other public policy issues, and conducts election protection throughout the election process, among other activities.  Bowman Decl. ¶ 9.  It thus has a strong and unique interest in protecting against the deregistration of eligible voters.

The League also concentrates its registration efforts in underserved communities with large numbers of unregistered voters, particularly low-income and communities of color where citizens face unique barriers to registration, keeping their registrations current, or re-registration. *Id.* ¶ 10.  In recent years, the League has also focused its attention on combatting misinformation about the electoral process, *id.* ¶ 8, ensuring that voters have access to trustworthy facts about how Michigan elections work.

The League has expertise specifically relevant to the issues in this lawsuit.  In particular, it has grappled with improper methodologies used to challenge the accuracy of voter rolls.  In partnership with the League's national and other local chapters, the League and its sister Leagues have investigated and litigated challenges based on the accuracy of voter rolls.[3]

---

[3] *See e.g.*, Legal battles over voter roll purchase heat up as mail-in ballot fight continues (May 28, 2020), https://www.lwv.org/newsroom/news-clips/legal-battles-over-voter-roll-purges-heat-mail-ballot-fight-continues (noting League chapter participation in North Carolina case regarding "aggressive—and potentially unlawful" purging of names from state rolls, due to difficulty in reaching and re-registering eligible voters, as well as Pennsylvania lawsuit relying on "outdated data");  Ambrogi and Senecal: 'Voter Registration Systems Need Both Access & Security—How ERIC Helps State Government Strike the Balance," https://www.lwv.org/newsroom/news-clips/ambrogi-and-senecal-voter-registration-systems-need-both-access-security-how (national League analysis of tools used to maintain accurate voter rolls).

Based on its expertise in this area, the League believes that if the Secretary of State embarks on the type of overbroad voter roll purges that Plaintiffs demand, the League's constituencies will be impacted.  Bowman Decl. ¶ 14.  Among other harms, eligible voters who are wrongly purged may not find out their registration is cancelled until they show up to vote in an election or realize that they have not received their absentee ballot.  *Id.* ¶ 15.  This can prevent them from voting in elections in which they should have been entitled to vote.  *Id.*

**B.** **Plaintiffs' Recycled Attempt To Use The NVRA To Disenfranchise Michigan Voters**

Plaintiffs bring a single count alleging Michigan's voter-list maintenance practices violate section 8 of the NVRA.  *See* Compl. ¶¶ 12–23, 96–100, ECF No. 1, PageID.12–13, 19–20.  They seek permanent injunctive, declaratory, and other statewide relief aimed at intervening in state election administration to significantly purge voter rolls before the November 2024 election.  *See id.* at WHEREFORE clause, PageID.20.

As the Court recently explained in dismissing a similar section 8 claim, "Congress enacted the NVRA" to "'*increase* the number of eligible citizens who register to vote in elections for Federal office;'" "'*enhance*[ ] the participation of eligible citizens as voters in elections for Federal office;'" "'protect the integrity of the electoral process;'" and "'ensure that accurate and current voter registration rolls are maintained.'"  *See PILF*, 2024 WL 1128565, at *1 (quoting 52 U.S.C. § 20501(b)(1)–(4) (emphasis added)).  Congress enacted these provisions to minimize "'purge systems' [that] had been used to 'violate the basic rights of citizens,' particularly members of 'minority communities.'"  *Pub. Int. Legal Found., Inc.* v. *N.C. State Bd. of Elections*, 996 F.3d 257, 264 (4th Cir. 2021) (quoting S. Rep. No. 103–6, 18 (1993)).

In enacting the NVRA, Congress was concerned that voter-list maintenance programs "can be abused and may result in the elimination of eligible voters from the rolls."  S. Rep.

No. 103–6 at 17, 32.  Thus, the NVRA aims to "ensure that once a citizen is registered to vote, he or she should remain on the voting rolls so long as he or she remains eligible to vote."  *Id.*

Consistent with these concerns, section 8 requires that states implement only a "'general program that makes a reasonable effort to remove the names of ineligible voters,'" while also complying with the NVRA's stringent restrictions on states' ability to remove voters improperly. *See PILF*, 2024 WL 1128565, at *1 (citations omitted).  Thus, "the NVRA requires only a 'reasonable effort,' not a perfect effort" and "does not require states to immediately remove every voter who may have become ineligible."  *Id.* at *11.  This Court confirmed roughly one month ago that "Michigan's multilateral process" to remove deceased voters from the rolls is "reasonable."  *Id.*

In the past, as in this lawsuit, partisan organizations have attempted to demonstrate that states' efforts to maintain accurate voting rolls must be flawed by pointing to alleged discrepancies between the voter rolls and population statistics in electoral jurisdictions.  Courts have found many of these methodologies to be "misleading" because they do "not account for growth" or "college students, military personnel, and persons who reside only part of the year" in each county, "all of whom may be properly registered and vote…but would not be included in…population estimates."  *See Bellitto* v. *Snipes*, 935 F.3d 1192, 1208 (11th Cir. 2019); *see also Jud. Watch, Inc.* v. *Penn.,* 524 F. Supp. 3d 399, 405–06 (M.D. Pa. 2021) (dismissing section 8 claim where plaintiffs' underlying voter data is "no longer valid").

### C.    <u>Efforts To Sow Distrust In Election Administration</u>

Plaintiffs' complaint includes several misleading and incomplete representations that distort the state of the voter rolls and the voter-list maintenance process.  For example, Plaintiffs use a misleading methodology—comparing a five-year Census average that concludes in 2022 to

the number of *current* registrants—to suggest Michigan's voter rolls are "suspiciously high." Compl. ¶ 47, ECF No. 1, PageID.11.  But, as the district court in *Bellitto* explained, "The data source used for the number of registered voters…numerator is not commensurate with the source used for the number of eligible voters in [the] denominator. This is because the sources include different groups of voters from different time periods." *Bellitto* v. *Snipes*, No. 16-cv-61474 (S.D. Fla. Mar. 30, 2018), ECF No. 244, at 18.

Additionally, Plaintiffs' complaints about high rates of inactive voters and deficiencies in voter-list maintenance related to voters' changing residences fail to mention the NVRA's notice-and-waiting requirement.  *See* Compl. ¶¶ 61–67, ECF No. 1, PageID.13–14. Under the NVRA, a registrant may be removed from the rolls "by reason of…a change in the residence of the registrant," only if the "registrant…confirms in writing that the registrant has changed residence" or "has failed to respond to a notice [and] has not voted or appeared to vote in 2 or more consecutive general elections for Federal office."  52 U.S.C. § 20507(a)(4)(B), (d)(1)(A)-(B). The NVRA's notice-and-waiting requirement necessarily means that Michigan voters who are *already* in the removal process for reason of a change in residence will remain on the rolls, in inactive status, for at least two years, in compliance with federal law.

This lawsuit is only one front in the RNC's multifaceted campaign, in the immediate run up to significant elections, to use the courts to disenfranchise voters, sow distrust in the electoral process, and consume election officials' resources.  Just last week, for example, the RNC sued Secretary Benson and Director Brater in the Michigan Court of Claims alleging they "covertly" directed election officials to violate Michigan Election Law.[4]  The RNC regularly promotes its

---

[4] Compl. ¶ 6, *Republican National Committee et al.* v. *Jocelyn Benson et al.*, No. 24-0000-MZ (Mich. Ct. Cl. Mar. 28, 2024), https://www.democracydocket.com/wp-content/uploads/2024/03/2024-03-27-Complaint.pdf

sweeping voter purge efforts in national news media, including as recently as last week on Meet the Press where former RNC chair Ronna McDaniel bragged that "we are in 78 lawsuits right now at the RNC."[5]

## ARGUMENT

## I.   THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(A)

A non-party has a right to intervene in an action where: (1) the application to intervene is timely; (2) the applicant has a substantial legal interest in the subject matter of the pending litigation; (3) the applicant's ability to protect that interest in the absence of intervention may be impaired by disposition of the action; and (4) the parties already before the court do not adequately represent that interest.  Fed. R. Civ. P. 24(a)(2).  The League satisfies each of these elements.

### A.     The League's Motion Is Timely

Courts "evaluate timeliness in the context of all relevant circumstances and consider the following five factors" in determining whether a motion to intervene is timely: (1) the stage of the litigation; (2) the purpose for which intervention is sought; (3) the length of time preceding the motion during which the potential intervenors knew or should have known of their interest in the litigation; (4) the prejudice to the original parties due to the potential intervenors' failure to promptly move to intervene; and (5) the existence of unique circumstances militating against or in favor of intervention.  *Kirsch* v. *Dean*, 733 Fed. App'x 268, 274–75 (6th Cir. 2018) (internal quotation marks and citation omitted).

---

[5] *See* Meet The Press Tr., National Broadcast Corporation, March 24, 2024, https://www.nbcnews.com/meet-the-press/meet-press-march-24-2024-n1309365.

Applying these factors, the League's motion is timely. First, the case is in the nascent stage of litigation. Plaintiffs sued less than one month ago on March 13, 2024, no scheduling conference has been set, and discovery has not commenced. No responsive pleadings have been filed. In *Daunt*, where the League moved to intervene more than three months into the case, this Court held that the League's motion was "obviously timely: there has not even been a Rule 16 yet, and a defense motion to dismiss is still being briefed." *See* Order Granting Mot. to Intervene, *Daunt* v. *Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30, at 2. The League's motion to intervene in *Winfrey* was likewise held to be timely even though it was filed more than two months after commencement of the action, after defendants filed a responsive pleading. 463 F. Supp. 3d at 799.

Second, the League has acted expeditiously. Since receiving notice of this action, the League sought the advice of counsel, determined that its interests may not be adequately represented, and moved to intervene even more promptly than in *Daunt and Winfrey*.

Third, the League seeks to intervene for the proper purpose of protecting the voting rights of its members and of all Michigan citizens who are eligible voters. *See, e.g.*, *Winfrey*, 463 F. Supp. 3d at 799 (finding the League's purpose for intervention of preventing the adoption of "unreasonable" list maintenance measures to be "facially legitimate").

Fourth, there is no prejudice to the original parties because the League promptly moved to intervene and will not alter the timeline upon which this case will be adjudicated. *See id.* at 801. To the contrary, the Court and all parties will benefit from the League's knowledge of election administration and its successful execution of nonpartisan duties in Michigan and elsewhere for more than a century. *Kobach* v. *U.S. Election Assistance Com'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D . Kan. Dec. 12, 2013) ("Applicants' experience, views, and

9

expertise, particularly as to the effects of the state voting registration requirements at issue on voter registration efforts, will help to clarify, rather than clutter the issues in the action, which will in turn assist the Court in reaching its decision.").  Moreover, "even if some prejudice may result, any complication of the case must be weighed against the value of resolving all competing legal positions within a single decisive lawsuit setting out the prevailing law for all parties to follow."  *Winfrey*, 463 F. Supp. 3d at 801–02 (citing *Buck* v. *Gordon*, 959 F.3d 219, 225 (6th Cir. 2020)).

Finally, there are no unique circumstances that militate against intervention at this early stage of the proceeding.

### B.      The League Has a Substantial Legal Interest in the Case

The Sixth Circuit "subscribe[s] to a 'rather expansive notion of the interest sufficient to invoke intervention of right.'" *Grutter* v. *Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (quoting *Mich. State AFL-CIO* v. *Miller,* 103 F.3d 1240, 1245 (6th Cir. 1997)).  It "has acknowledged that 'interest' is to be construed liberally."  *Bradley* v. *Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).  For instance, a proposed intervenor is not required to have a "specific legal or equitable interest" in the litigation.  *Mich. State AFL-CIO*, 103 F.3d at 1245.  Given this expansive understanding of an interest sufficient to invoke intervention as of right, "close cases should be resolved in favor of recognizing an interest."  *Mich. State AFL-CIO*, 103 F.3d at 1247.

As a strong proponent of registration reform and a major sponsor of voter assistance and registration efforts, the League has a compelling interest in protecting against the deregistration of eligible voters that Plaintiffs seek.  As the court in *Winfrey* recognized, the League has a "facially legitimate" interest to ensure "that no unreasonable measures are adopted that could pose an elevated risk of removal of legitimate registrations" and "to avoid the need to expend the

resources of the association identifying and aiding incorrectly removed legitimate voters in unnecessary efforts to have their registrations restored, in case they are purged by mistake." *See Winfrey*, 463 F. Supp. 3d at 798–99; *see also* Order Granting Mot. to Intervene, *Daunt* v. *Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30, at 2 (recognizing the League's interest in limiting "the risk of chilling or escalating the costs of voter registration drives").  This interest has been at the core of the League's mission for more than a century and is reflected in its efforts to help register eligible persons to vote and especially in supporting voters in communities with registration and participation gaps, including people of color and low-income Americans for whom the NVRA was enacted to protect.  *See* S. Rep. No. 103–6, 18. By "[c]omparing the registered active voter count to the 2022 Census data" and employing other facially flawed methodologies to deem 2024 registration rates in these counties "impossibly" or "inordinately high," the RNC threatens the League's mission and its members' valid registrations.  Compl. ¶¶ 3, 48, 57, ECF No. 1, PageID.1, 11, 13; Bowman Decl. ¶¶ 14-15.

Courts in other jurisdictions have also recognized the League's and similar organizations' interests in protecting access to the ballot, and have granted intervention in cases where such organizations seek to ensure that voters are not wrongfully purged from voter rolls.  *See*, *e.g.*, *Bellitto* v. *Snipes*, No. 16-CV-61474, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016) (granting union's motion to intervene where "its interest and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *Kobach*, 2013 WL 6511874, at *4 (permitting the League to intervene because "Applicants have clearly shown their interests in either increasing participation in the democratic process, or protecting voting rights, or both, particularly amongst minority and underprivileged communities").

### C.    The League's Ability to Protect Its Interests Will Be Impaired Absent Intervention

The League is "so situated that disposing of th[is] action may as a practical matter impair or impede [its] ability to protect its interest" in protecting eligible Michigan voters.  Fed. R. Civ. P. 24(a)(2).  "To satisfy this element of the intervention test, a would-be intervenor need show only that impairment of its substantial legal interest is *possible* if intervention is denied."  *Mich. State AFL-CIO*, 103 F.3d at 1247 (emphasis added).  "This burden is minimal."  *Id.*

As discussed, the League's mission is to promote voter registration and participation, and it commits substantial time and resources to encouraging civic participation and registering voters, including in the counties targeted by the RNC.  *See Winfrey*, 463 F. Supp. 3d at 799. Given that available information about the current status and residence of voters is inescapably imperfect, and given that there will be a limited amount of time between any ruling in this case and the national elections in November, if Plaintiffs succeed in requiring Defendants to take additional steps to purge the voter rolls across the State, involving potentially hundreds of thousands of voters, voters who are properly registered will nevertheless be incorrectly stricken from the rolls.  As a result, the League's voter education and registration efforts in Michigan would be set back and the League would have to redirect already-strained resources to ensure that erroneously purged voters learn of their removal and re-register before the election. Bowman Decl. ¶¶ 6–10, 13–16.

Thus, for example, the League would have to educate voters and encourage them to regularly check their registration status.  *Id*.  ¶ 13.  And it would have to combat disenchantment and confusion among Michigan voters (including League members) that will arise if Defendants are forced to institute voter roll purges which—inescapably—will sometimes be mistaken.  *Id*. ¶ 18.

**D.**   **Defendants May Not Adequately Represent the League's Interest**

A proposed intervenor "is not required to show that the representation will in fact be inadequate." *Mich. State AFL-CIO*, 103 F.3d at 1247.  It is sufficient to show that the original parties' "representation might be inadequate." *Grutter*, 188 F.3d at 400.  Thus, the Sixth Circuit has stated that proposed intervenors' "burden in showing inadequacy is minimal." *Id*. at 401. For example, even where the League and the Michigan Secretary of State "appear currently aligned" in defeating Plaintiffs' voter purging efforts, intervention is appropriate under Sixth Circuit precedent where those interests may diverge.  *See* Order Granting Mot. to Intervene, *Daunt* v. *Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30, at 2 (citing *Buck*, 959 F.3d at 225).

The evidence of potentially inadequate representation here goes beyond the "minimal" showing required to support intervention: the "Sixth Circuit has recognized that the interests of election officials in voting roll maintenance are sufficiently distinct from those of…their constituents to warrant intervention by those who could be impacted by the results of the maintenance process." *See Winfrey*, 463 F. Supp. 3d at 799 (citing *League of Women Voters of Mich.* v. *Johnson*, 902 F.3d 572, 579 (6th Cir. 2018).)

As this Court recently put it: "[o]n the one hand, maintaining clean voter rolls may help ensure election integrity, but on the other hand, purging voters from the rolls requires voters to re-register and hinders participation in elections." *PILF*, 2024 WL 1128565, at *1 (citations and internal quotation marks omitted).  Stated differently, "maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters." *Bellitto*, 935 F.3d at 1198.

13

These well-recognized, potentially diverging interests between Defendants and the League are more than enough to warrant intervention.  Indeed, absent League intervention, the interests of voters may not be fully advanced and protected.  *See League of Women Voters of Mich.*, 902 F.3d at 579.  While the League does not question Defendants' sincere intent to protect the rights of Michigan voters, Defendants have duties (as well as potential financial and manpower constraints) that may prove inconsistent, or at least in serious tension with, the League's laser-focus on enhancing and protecting the constitutional and statutory rights of voters.  *See Kobach*, 2013 WL 6511874, at *4 ("[G]overnment Defendants have a duty to represent the public interest, which may diverge from the private interest of Applicants.  As such, the existing Defendants may not adequately represent Applicants' specific interests.").

To be sure, the Court in *PILF* denied the motion to intervene filed by Detroit/Downriver Chapter of the A. Philip Randolph Institute, the Michigan Alliance for Retired Americans and Rise Inc. at the urging of the Secretary, accepting the Secretary's arguments that the proposed intervenors' application was untimely, that they had not established that their members or constituencies would be among those whose registrations might be adversely affected by a ruling in favor of plaintiff and that, in any event, the intervenors' interests were identical to the Secretary's.  *See PILF*, 2024 WL 1128565, at *10-11.  By contrast, the Secretary does not oppose the League's timely application here, and for good reason, because courts have recognized the League's "facially legitimate," distinct interests and expertise in voter-roll maintenance.  *See Winfrey*, 463 F. Supp. 3d at 798–99; *League of Women Voters of Mich.*, 902 F.3d 579; *see also Berger* v. *N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203–04 (2022) (in granting intervention, discussing why state executive officers are often inadequate representatives for private actors with non-identical interests).

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(B)

Courts routinely grant permissive intervention without regard to whether an applicant is entitled to intervention as of right.  *See*, *e.g.*, *League of Women Voters of Mich.*, 902 F.3d at 577; *Winfrey*, 463 F. Supp. 3d at 799.  To permissively intervene, "a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact."  *United States* v. *Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).  Once established, the district court will consider the possible undue delay and prejudice to the original parties and any other relevant factors.  *Id.*

For the reasons above, this motion is timely and the League's intervention will result in no prejudice or delay; if anything, its election expertise and nonpartisan focus may simplify the case.  And the League indisputably raises common issues of law and fact.  The League should be permitted to intervene here for the same reasons that intervention was permitted in *Daunt* and *Winfrey*.  *See Winfrey*, 463 F. Supp. 3d at 799–802; *see also* Order Granting Mot. to Intervene, *Daunt* v. *Benson*, No. 1:20-cv-522 (W.D. Mich. Sept. 28, 2020), ECF No. 30, at 1–2.

## <u>CONCLUSION</u>

The League respectfully requests that the Court grant its motion to intervene.

Dated: April 4, 2024

Respectfully submitted,

*/s/ Eliza Sweren-Becker*

BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW

Eliza Sweren-Becker (N.Y. Bar No. 5424403)
Andrew B. Garber (N.Y. Bar No. 5684147)*
Sean Morales-Doyle (N.Y. Bar No. 5646641)
120 Broadway, Suite 1750

New York, NY 10271
Telephone: 646.292.8310
Facsimile: 212.463.7308
sweren-beckere@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu
morales-doyles@brennan.law.nyu.edu

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Robert A. Atkins (N.Y. Bar No. 2210771)*
Richard A. Rosen (N.Y. Bar No. 1663830)*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212.373.3000
Facsimile: 212.757.3990
ratkins@paulweiss.com
rrosen@paulweiss.com

Meredith R. Dearborn (C.A. Bar No. 268312)*
535 Mission St., 24th Floor
San Francisco, CA 94105
Telephone: 628.432.5100
Facsimile: 628.232.3101
mdearborn@paulweiss.com


*Attorneys for Proposed
Intervenor-Defendant*

*\*Application for admission forthcoming*

**<u>CERTIFICATE OF COMPLIANCE</u>**

This document was prepared using Microsoft Word MSO (Version 2309 Build 16731.20600) (64-bit).  The word count for the League's Brief in Support of Motion to Intervene as provided by that software is 4,295, which is less than the 4,300-word limit for a brief filed in support of a nondispositive motion.

Respectfully submitted,

/s/ *Eliza Sweren-Becker*
Eliza Sweren-Becker


*Counsel for Proposed*
*Intervenor-Defendant*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 4, 2024, I caused a true and correct copy of the foregoing document

to be filed and served electronically via the ECF system.

Respectfully submitted,

/s/ *Eliza Sweren-Becker*
Eliza Sweren-Becker


*Counsel for Proposed*
*Intervenor-Defendant*