# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, JORDAN JORRITSMA, and EMERSON SILVERNAIL,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOCELYN BENSON, *in her official capacity as Michigan Secretary of State*; JONATHAN BRATER, *in his official capacity as Director of the Michigan Bureau of Elections*,<br><br>*Defendants*. | **RESPONSE IN OPPOSITION TO INTERVENTION MOTION**<br><br>Case No. 1:24-cv-00262 |

## **INTRODUCTION**

Just two years ago, this Court denied a nearly identical intervention motion filed in a similar NVRA case. *See Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *10-13 (W.D. Mich. Aug. 25, 2022) (Beckering, J.). The State defended that case through summary judgment, where it recently won without the intervenors' help. *See* 2024 WL 1128565 (W.D. Mich. Mar. 1, 2024). The State has shown its willingness and ability to litigate NVRA lawsuits without additional help and to adequately represent the interests of the proposed intervenors. In fact, the Michigan Alliance for Retired Americans, one of the proposed intervenors here, was a part of that earlier failed intervention attempt. The Court should deny this intervention motion, too.

As this Court's earlier intervention order recognized, the proposed intervenors have no right to help the State litigate this case. To start, they have not shown a legally

protectable interest in this matter. Their concern is that if Plaintiffs prove that Michigan is violating the NVRA, then the *remedy* for that violation might illegally sweep in eligible voters. But that interest is premature and hypothetical—nothing about this case, Plaintiffs' requested relief, or enforcement of the NVRA will result in eligible voters being improperly removed from the rolls. In any event, those interests are adequately represented by the state defendants. And the proposed intervenors have no evidence that the State's representation will be deficient or that the defendants will otherwise fail to litigate this case effectively.

Intervention will also impose substantial costs on the parties while providing no benefit to the Court. Adding three new parties will encumber scheduling, increase the costs of litigation, and slow down proceedings. In the midst of election season, those setbacks are substantial. And the proposed intervenors will bring nothing new to the table—they have identified no arguments or positions they would take that the State would be unwilling to press. Their participation is at best superfluous. More likely, it will increase burdens on the parties and the Court.

This Court made all of these points when it denied intervention in *Public Interest Legal Foundation*. This case is no different. This Court's reasoning is also no outlier. Federal courts routinely deny intervention to parties attempting to insert themselves into NVRA cases. *See Green v. Bell*, No. 3:21-cv-493, 2023 WL 2572210, at *6-7 (W.D.N.C. Mar. 20, 2023); *Jud. Watch, Inc. v. Griswold*, No. 1:20-cv-2992, 2021 WL 4272719, at *5 (D. Colo. Sept. 20, 2021); *Common Cause Ind. v. Lawson*, No. 1:17-cv-3936, 2018 WL 1070472, at *6 (S.D. Ind. Feb. 27, 2018); *Jud. Watch, Inc. v. King*, No. 1:12-cv-800, 2013 WL 12290842, at *2 (S.D. Ind. Mar. 20, 2013); *United States v. Florida*, No.

4:12-cv-285, 2012 WL 13034013, at *3 (N.D. Fla. Nov. 6, 2012); *Arcia v. Detzner*, No. 1:12-cv-22282, 2012 WL 12844562, at *3 (S.D. Fla. Sept. 28, 2012). The proposed intervenors here have no better showing, and the Court should deny the motion.

## CONCISE STATEMENT

The Court should deny the motion because the proposed intervenors do not meet the standards for intervention under Federal Rule of Civil Procedure 24.

## ARGUMENT

### I. The proposed intervenors do not have a right to intervene in this case.

To intervene as of right under Rule 24(a)(2), the proposed intervenors must file a timely motion that shows: (1) they have a substantial legal interest in this case; (2) their ability to protect that interest will be impaired without intervention; and (3) their interest is not adequately represented by existing parties to the litigation. *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011). "Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule." *Id.*

#### A. The proposed intervenors do not have legally protectable interests at stake in this case.

The proposed intervenors assert two interests in this case, and this Court has already rejected both. They claim interests in "ensuring that their members and constituents remain on the rolls," and in "avoiding the need to divert resources to protect their members and constituents from unlawful cancellations of registration." Doc. 9, PageID.114-115. In *Public Interest Legal Foundation*, the Michigan Alliance for Retired Americans and other intervenors claimed identical interests in mitigating the risk that their "members or constituents may be improperly purged from Michigan's

3

voter rolls," and in avoiding the need "to divert resources to minimize the risk that their members and constituents will be disenfranchised while the relief is implemented." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *10. This Court rejected those speculative interests then, and it should do so again now.

The proposed intervenors have made no attempt to argue that this Court's decision in *Public Interest Legal Foundation* was wrong. Nor could they. The intervenors must show "a substantial legal interest in the case." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011). The proposed intervenors describe the interest requirement as "expansive," Doc. 9, PageID.114, but that "does not mean that any articulated interest will do." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022) (citation omitted). Rather, "the interest must be significantly protectable to rise to the level of substantial." *Id.* (cleaned up). Interests that are "speculative" are not "substantial." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *11.

The proposed intervenors' sole concern is that this case might lead to a "rushed purge process." Doc. 9, PageID.112. As an initial matter, the proposed intervenors don't have "a substantial *legal* interest" in keeping ineligible voters on the rolls. *Blount-Hill*, 636 F.3d at 283 (emphasis added). And they don't claim such an interest. Rather, they fear that future relief "might also remove eligible voters." Doc. 9, PageID.116 (quoting *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019)). But that interest is highly speculative, and contingent on at least four assumptions. First, it assumes that Plaintiffs will prevail in proving that Michigan violated federal law (after motions practice, discovery, and potentially a trial). Second, it assumes that the appropriate remedy would require Michigan to adopt new procedures (rather than following existing procedures).

4

Third, it assumes a proposed remedy that would require Michigan to adopt unlawful, overbroad list-maintenance procedures. And fourth, it presumes that Plaintiffs will obtain "rushed" relief before the 2024 election. That the proposed intervenors' "speculative" interests are contingent on each of these events means they are not "substantial" enough to support intervention. *Pub. Int. Legal Found.*, 2022 WL 21295936, at *11.

Throughout their brief, the proposed intervenors all but admit that their interests are contingent. They fear "an elevated risk of erroneous cancellation." Doc. 9, PageID.111. "*If* Plaintiffs obtain the rushed purge they seek," the proposed intervenors say their constituents may be harmed. Doc. 9, PageID.112 (emphasis added). They claim their members are "disproportionately vulnerable," which "increase[s] a voter's risk of wrongful removal" and means their fears are "statistically" supported. Doc. 9, PageID.112. And the Hail Mary pass: "the Alliance's sheer size gives it a rightful stake in this case." Doc. 9, PageID.112. All of these claims are just concessions that their interests are speculative.

The proposed intervenors point out that the NVRA gives them a right to challenge the "improper removal of eligible voters," Doc. 9, PageID.115, but that only proves that their interests are more appropriately asserted as *plaintiffs* in other lawsuits that are not yet ripe. This lawsuit does not ask the State to remove eligible voters who are properly included on the registration lists. To the extent the proposed intervenors have a right to challenge the improper removal of voters, they can litigate that right once it is "aggrieved by a violation of [the NVRA]." 52 U.S.C. §20510. But their interests in *this case* are based on nothing but speculation that some amount of voters would be

improperly removed. That the proposed intervenors haven't pointed to a violation, haven't sent the NVRA-required notice letter, and haven't filed a lawsuit only prove that their interests are not ripe.

That the proposed intervenors spend money pursuing their interests does not make those interests any less speculative. Just as plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm," neither can intervening defendants manufacture an interest by spending money on speculative claims. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see Pub. Int. Legal Found.*, 2022 WL 21295936, at *10 (ruling that the intervenors' resource diversion failed to satisfy even the "expansive notion of the interest sufficient to invoke intervention of right"). If the rule were otherwise, every organization would be able to satisfy Rule 24 merely by claiming that they will spend money as a result of the speculative consequences of a lawsuit. Because the proposed intervenors' sole underlying interest is speculative, whatever money they spend in pursuit of that interest is likewise insufficient to support intervention.

This Court's prior decision denying intervention in this circumstance is correct. The proposed intervenors have provided no reason to depart from that precedent. The only case they muster granting intervention as of right in similar circumstances did so with little analysis because no party opposed intervention. *See Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016). Instead of that sparse, unopposed order, this Court's detailed reasoning denying intervention should govern. This case is about whether Michigan is maintaining its voter registration records in compliance with federal law. It has nothing to do with the ancillary efforts of third-

6

party organizations to register voters, regardless of how much money they spend on those efforts.

### B. The proposed intervenors have not shown that the State's representation will be inadequate.

Whatever interests the proposed intervenors have in this case will be adequately defended by the State. The intervenors "bear the burden of proving that they are inadequately represented by a party to the suit." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). And where, as here "the proposed intervenor and party to the suit currently share the 'same ultimate objective' …, a presumption of adequate representation arises." *Wineries of the Old Mission Peninsula*, 41 F.4th at 774 (quoting *Michigan*, 424 F.3d at 443-44). Generally, that presumption is overcome by showing "collusion … between the representatives and an opposing party," that the representative has "an interest adverse to the proposed intervenor," or that the representative has "failed in its fulfillment of his duty." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citation omitted). Merely "having an interest which is diverse from" the existing parties is insufficient to overcome the presumption. *Id.* at 1193.

The proposed intervenors suggest that the presumption no longer applies after *Berger*, but that misreads both *Berger* and a subsequent Sixth Circuit decision. *See* Doc. 9, PageID.120. In *Berger*, the Supreme Court permitted state legislators to intervene in defense of a state law. *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 196 (2022). The Court observed that "some lower courts have adopted a presumption of adequate representation in cases where a movant's interests are identical to those of an existing party." *Id.* It did not criticize that presumption, which held "no purchase" in

that case anyway. *Id.* And that's not the presumption that applies here, either: the Sixth Circuit presumes that representation is adequate when the party and the intervenor "share the 'same ultimate objective.'" *Wineries of the Old Mission Peninsula*, 41 F.4th at 774. If there were any doubt that the presumption is still required here, the Sixth Circuit resolved it by applying the presumption of adequate representation even after *Berger*. *See id.* at 774, 777 (citing *Berger*, 142 S. Ct. at 2205).

The proposed intervenors all but admit they share the same ultimate objective as the State. Indeed, they admit that the defendants "are likely to defend Michigan's list maintenance practices and oppose relief." Doc. 9, PageID.119. The proposed intervenors quibble that some of their interests might not align perfectly with the State's, but they undoubtedly share the same *ultimate* objective: dismissal of the suit. *See Wineries of the Old Mission Peninsula*, 41 F.4th at 774 (parties shared the same ultimate objective when both were "defending the zoning ordinances").

The proposed intervenors fall far short of showing that the State's representation will be inadequate. After all, the State *represents* the interests of voters. The Secretary is the State's chief election officer, Mich. Comp. Laws §168.21, and the Director of Elections must "perform the duties of the secretary of state under his or her supervision, with respect to the supervision and administration of the election laws," *Id.* §168.32. The NVRA charges them with "protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019). "A party charged by law with representing the interests of the absent party will usually be deemed adequate." *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982), *cited approvingly in Geier v. Sundquist*, 94 F.3d 644 (6th Cir.

8

1996) (table); *see Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007) ("[A public interest group's] interest [in intervention] is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written.").

The proposed intervenors argue that there is "tension" between the two duties imposed by the NVRA, Doc. 9, PageID.119, but that argument proves too much: the proposed intervenors admit that the NVRA tasks the State with representing the very interests that they claim in this case. The intervenors may prefer that the State ignore its duty to "protect[] electoral integrity," but the fact that the State is charged with that duty is hardly evidence that the State's representation of eligible voters will be inadequate. Congress, after all, charged the State with those objectives, understanding that it could accomplish both effectively.

Moreover, the proposed intervenors have no evidence from this case that the State's representation will be inadequate. They claim that the Secretary has resolved older cases through settlement. Doc. 9, PageID.119. But that is not evidence that *these* state officials will resolve *this* case through settlement. Indeed, the Secretary has not held back in characterizing this as a "meritless lawsuit." Jane C. Timm, *The Republican National Committee Sues Michigan over the State's Voter Rolls*, NBC News (Mar. 13, 2024), https://perma.cc/224M-DYM4. There can be little doubt that she will zealously defend the State's position. In any event, Movants would have no right to "block" a settlement, even if they intervened. *Youngblood v. Dalzell*, 804 F.2d 360, 364 (6th Cir. 1986). And the state defendants do not object to Movants' participation in this case, so they remain "free to impose conditions" on any settlement negotiations, including by "requiring the

9

presence of [Movants]." *United States v. Lexington-Fayette Urban Cty. Gov't*, No. 1: 06-cv-386, 2007 WL 2020246, at *3 & n.5 (E.D. Ky. July 6, 2007).

The cases finding inadequate representation only prove that the proposed intervenors come up short here. The presumption may be overcome by showing "that the party has 'interests adverse to the intervener,'" such as when government defendants are subject to monetary damages, while the intervenors are not. *Wineries of the Old Mission Peninsula*, 41 F.4th at 774 (quoting *Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000)). Other courts have recognized inadequate representation when the State "fail[s] to appeal the court's judgment," and "intervention [is] vital to the defense of the law at issue." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019) (citing *Horne v. Flores*, 557 U.S. 433, 443 (2009)). Others still require the intervenor to show collusion between parties or that the defendant has "failed in its fulfillment of [its] duty." *Bradley*, 828 F.2d at 1192. None of these situations is present here.

Again, this Court should follow its own precedent. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *11 ("While the positions of the Proposed Intervenors and Secretary Benson may not identically align, their interests are sufficiently overlapping such that there is no substantial doubt that their concerns about disenfranchisement are already being adequately represented by Michigan's Secretary of State."); *Green*, 2023 WL 2572210, at *6 (ruling that the proposed intervenors failed to carry even "their 'minimal' burden of showing representational inadequacy"). In short, "[w]hile the Proposed Intervenors also claim an interest in ensuring such compliance, there is no reason to

10

conclude that [the Secretary] … is unable to litigate this case in a way that protects that interest." *Green*, 2023 WL 2572210, at *6.

*   *   *

This Court's decision in *Public Interest Legal Foundation* resolves this motion. The proposed intervenors point to only two differences between that case and this one. The first is that the Secretary here does not take a position on the motion to intervene, while in *Public Interest Legal Foundation* she opposed the motion. But the Secretary's position on intervention is irrelevant to whether the proposed intervenors have a *legal right* to intervene. To be sure, the Secretary made some of these arguments in *Public Interest Legal Foundation*. This Court recognized that those arguments are correct not because it was the Secretary that made them, but because the law requires that conclusion.

The second distinction the proposed intervenors point to is timeliness: the intervenors here filed about a month earlier compared to the attempt in *Public Interest Legal Foundation*. But this Court did not base its denial of the motion in that case on timeliness. It simply noted that "the motion to intervene, which was filed while the parties were already briefing their motion to dismiss, is arguably untimely." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *11. The Court then went on to explain that the intervenors failed the other elements of Rule 24. *Id.* at *11-12. Those holdings are the ones that preclude the motion here.

Moreover, timeliness only underscores that the request for intervention "is premature." *League of Women Voters of Mich. v. Johnson*, No. 2:17-cv-14148, 2018 WL 3861731, at *1 (E.D. Mich. Aug. 14, 2018) (three-judge district court). This case resembles *United States v. Michigan*, where parties tried to intervene "to protect their

11

divergent interests 'in the event'" the plaintiffs won on liability. 424 F.3d 438, 444 (6th Cir. 2005). The movants' interests, the Sixth Circuit explained, "seem more concerned about what will transpire in the future should the district court determine" that the plaintiffs are correct on the merits. *Id.* "While the proposed intervenors may be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court." *Id.* Intervention would thus "prematurely seek to inject [remedial] issues that are not yet before the [district] court," "complicate the case," and "prejudice[] the original parties." *Id.* at 444-45. And to the extent the intervenors wanted to make arguments about liability, they "failed to articulate why the State of Michigan's legal representation concerning this issue is inadequate." *Id.* at 444. So too here.

At the very least, the Court should simply deny the motion to intervene without prejudice, note the proposed intervenors' remedial concerns, and state that "[s]hould the litigation proceed that far, the proposed intervenors may renew their motion." *Id.* at 446. Until that point, the proposed intervenors have no business litigating this case for the State.

## II. The court should deny permissive intervention.

This Court should also deny permissive intervention. Though Rule 24(b) lists a few factors that must be considered, this Court "enjoys very broad discretion" in denying permissive intervention and "can consider almost any factor rationally relevant." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999); *accord Michigan*, 424 F.3d at 445 (explaining that a district court can consider the factors in Rule 24(b) and "any other relevant factors").

12

This Court should deny permissive intervention for largely the same reasons outlined above. As explained, the proposed intervenors' interests are speculative, remote, and already well-represented by the State. "*Any* delay caused by Applicants' intervention," then, "would be undue." *League of Women Voters of Mich. v. Johnson*, No. 2:17-cv-14148, 2018 WL 3861731, at *2 (E.D. Mich. Aug. 14, 2018) (emphasis added). When "intervention as of right is decided based on the government's adequate representation," as it should be here, "the case for permissive intervention diminishes, or disappears entirely." *Me. Republican Party v. Dunlap*, No. 1:18-cv-179, 2018 WL 2248583, at *2 (D. Me. May 16, 2018); *see also League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) (adequate representation "counsels against granting permissive intervention"). Defendants' adequate representations means that Movants' "intervention would simply be piling onto the arguments advanced by the other parties to this litigation," *Donald J. Trump for President, Inc. v. Bullock*, No. 1:20-cv-66, 2020 WL 5517169, at *2 (D. Mont. Sept. 14, 2020), and "would result only in the duplication of the efforts of the existing Defendants and undue delay of the litigation," *Blount-Hill v. Bd. of Educ. of Ohio*, 195 F. App'x 482, 487 (6th Cir. 2006).

The added burden of Movants' participation here is not small. Because "[i]ntervening parties are entitled to all the rights and responsibilities of original parties to litigation," adding the intervenors will increase the costs of litigation, make scheduling more cumbersome, and inevitably slow down proceedings. *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008); *see also Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955-56 (9th Cir. 2009) (upholding the district court's determination that intervention "might very well delay the proceedings, as each

13

group would need to conduct discovery on substantially similar issues," which "in all probability would consume additional time and resources of both the Court and the parties"). Even minor delays are especially problematic in "time sensitive" election cases such as this one, where "the general election is fast approaching." *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259.

Again, this Court's earlier decision is instructive. This Court recognized that "[a]dding three more defendants, even if they submit joint filings, realistically portends more discovery and more motions, and therefore more time and resources expended before a resolution of the important issues in this case can be rendered." *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12; *see also Green*, 2023 WL 2572210, at *7 (denying permissive intervention because the intervenors' "participation would needlessly complicate this litigation, consuming additional resources of the court and the parties, without any corresponding benefit" (cleaned up)). Because "timely resolution is critical to the integrity of the election process, both its perceived and actual integrity," the Court should deny permissive intervention. *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12.

And the flood of intervenors will not stop. Just last night, the League of Women Voters moved to intervene. *See* Doc. 12. These extra motions, additional parties, and superfluous pleadings will pile on unless the Court affirms that the State can litigate this case effectively on its own. Any arguments that the proposed intervenors could provide to this Court can be accomplished through amicus briefs. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *13 ("The Proposed Intervenors are not precluded from seeking leave to file amicus briefs in future dispositive motion briefing by the parties.").

14

## **CONCLUSION**

For the foregoing reasons, the court should deny the motion to intervene.

Respectfully submitted,

Dated: April 5, 2024    /s/ *Thomas R. McCarthy*

Thomas R. McCarthy
Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This document was prepared using Microsoft Word Version 16.83. According to that software, the word count for this motion is 3,884 words, which complies with Local Rule 7.3(b).

*/s/ Thomas R. McCarthy*
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on April 5, 2024, I filed this document via the ECF system, which will serve everyone requiring notice.

*/s/ Thomas R. McCarthy*
Counsel for Plaintiffs
